IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

ROBERT FLEMING, CONSERVATOR, ON BEHALF OF THE SURVIVING MINOR
CHILDREN OF FAITH MASCOLINO,
*Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA DEPARTMENT OF PUBLIC SAFETY,
*Defendant /Appellee*.

No. 2 CA-CV 2013-0162
Filed October 31, 2014

———————————————

Appeal from the Superior Court in Pima County
No. C20095459
The Honorable Ted B. Borek, Judge

**AFFIRMED**

———————————————

COUNSEL

Mercaldo Law Firm
By Ronald D. Mercaldo, Tucson

and

Thomas A. Zlaket, PLLC
By Thomas A. Zlaket, Tucson

and

Law Office of Jojene Mills, PC
By Jojene E. Mills, Tucson
*Counsel for Plaintiff/Appellant*

Thomas C. Horne, Arizona Attorney General, Phoenix
By Robert R. McCright and Catherine M. Stewart,
Assistant Attorneys General, Tucson
*Counsel for Defendant/Appellee*

---

**OPINION**

Presiding Judge Miller authored the opinion of the Court, in which Judge Espinosa and Judge Vásquez concurred

---

M I L L E R, Presiding Judge:

**¶1**        Robert Fleming, conservator of the minor children of Faith Mascolino, appeals from a jury verdict in favor of the Arizona Department of Public Safety (DPS) related to Mascolino's death. Appellant argues the trial court should not have permitted the jury to consider A.R.S. § 12-820.02(A)(7), which provides qualified immunity for a state entity if the injury is attributable to the claimant's violation of statutes that prohibit driving under the influence and reckless driving.  He also argues the court erroneously admitted evidence of Mascolino's breath and blood alcohol test results.  For the reasons that follow, we conclude the court did not err in its jury instruction or its decision to admit the evidence.

**Factual and Procedural Background**

**¶2**        We view the facts in the light most favorable to upholding the jury's verdict, *see Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, ¶ 2, 79 P.3d 673, 674 (App. 2003), but, as discussed later, we review de novo pure questions of law and mixed questions of law and fact, *see Robson Ranch Mountains, L.L.C. v. Pinal Cnty.*, 203 Ariz. 120, ¶ 13, 51 P.3d 342, 347 (App. 2002).  One evening in June 2009, Faith Mascolino had drinks with some of her coworkers and her daughter, B.D., at three different establishments.  Around midnight, B.D. drove Mascolino back to her vehicle in mid-town Tucson.  B.D. later testified that Mascolino "felt okay to drive" at

that point. She also testified she had not noticed Mascolino drinking excessive amounts of alcohol on prior similar outings.

¶3        At about 1:15 a.m., DPS Officer Scott Walter saw Mascolino's vehicle proceeding west on Interstate 10, drifting across lane lines, and travelling well below the posted speed limit. Officer Walter called for backup and attempted to pull the vehicle over, but Mascolino refused to yield and continued driving erratically. Eventually she came to a stop in the emergency lane, very close to a guardrail on the rising approach to a freeway overpass.

¶4        Officer Walter got out of his cruiser and approached the vehicle. He asked Mascolino to give him her keys and to step out of the car. Mascolino had difficulty exiting, her speech was slurred, and she repeatedly said, "I'm okay, I'm okay." She had a sunken expression, a flushed face, and bloodshot eyes. She had trouble producing her driver's license when asked. Her balance was poor, and her breath smelled faintly of alcohol. She admitted she had been drinking that night, "a lot."

¶5        Another DPS officer, Fred Rivera, attempted to administer two field sobriety tests: the horizontal gaze nystagmus test and simple balance test. Mascolino was unable to complete the tests, and the officer determined he had probable cause to arrest her for driving under the influence of alcohol (DUI). Mascolino then agreed to take a portable breath test (PBT) at Officer Rivera's request. The test showed Mascolino's breath alcohol content (BrAC) was .252.

¶6        Officer Rivera placed Mascolino in the back of his cruiser, uncuffed. With Mascolino's help, he proceeded to call members of Mascolino's family on her cellular telephone, trying to find someone who could pick up her vehicle. While Rivera was on the phone with Mascolino's daughter, B.D., a vehicle driven by Robert Gallivan approached, moving diagonally from the middle lane to the emergency lane at a very high rate of speed. Officer Walter, who was standing watch, saw the oncoming vehicle and yelled a warning, and both officers managed to jump over the guardrail just in time to avoid being struck. Evidence showed they had about one second to react to the oncoming vehicle and no time

3

to attempt to pull Mascolino from Rivera's cruiser. Gallivan's car slammed into the rear of the cruiser and Mascolino died upon impact.

**¶7** Two different forensic laboratories later analyzed samples of Mascolino's blood taken during an autopsy. An Arizona DPS lab found her blood alcohol content (BAC) to be .250 and an independent lab in Indiana determined it was .231.

**¶8** Fleming brought a wrongful death action against Gallivan and DPS. At trial, over Fleming's objection, the court granted DPS's request for a jury instruction on qualified immunity pursuant to A.R.S. § 12-820.02(A)(7). The jury returned a verdict finding Gallivan and Mascolino seventy-five and twenty-five percent at fault, respectively. No fault was attributed to DPS. Fleming unsuccessfully moved for a new trial and this appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**Discussion**

**Qualified Immunity Instruction**

**¶9** Section 12-820.02(A)(7), A.R.S., affords qualified immunity to a state entity for "[a]n injury to the driver of a motor vehicle that is attributable to the violation by the driver" of A.R.S. §§ 28-693 (reckless driving), 28-1381 (DUI), or 28-1382 (driving under the extreme influence). The immunity, however, is limited and does not apply when the public employee engages in gross negligence or intends to cause the injury. § 12-820.02(A).

**¶10**        Fleming argues it was error for the court to instruct[1] the jury on qualified immunity because Mascolino was not a driver at the time of her death and, in any event, her death was not attributable to DUI.  We review questions of statutory interpretation de novo.  *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, ¶ 11, 322 P.3d 139, 142 (2014).  In addition, we review a trial court's jury instructions for an abuse of discretion.  *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, ¶ 50, 217 P.3d 1220, 1238 (App. 2009).  A party is entitled to a jury instruction on any theory of the case that the evidence reasonably supports.  *Id.*

**¶11**        Section 12-820.02(A)(7) imposes a two-part analysis.  First, a person must have violated §§ 28-693, 28-1381, or 28-1382.  Second, the person's injury must be "attributable to" that violation.  *See* § 12-820.02(A)(7).  An injury is attributable to a driver's violation, and qualified immunity applies, "when 'the violation by the driver of § 28-693, 28-1381 or 28-1382' is a cause or source of an injury to the driver."  *DeVries v. State*, 221 Ariz. 201, ¶ 21, 211 P.3d 1185, 1191 (App. 2009).  Put differently, if the injury is attributable to the violation, then a gross negligence or intent standard applies. § 12-820.02(A); *see also Luchanski v. Congrove*, 193 Ariz. 176, ¶ 20 & n.4, 971 P.2d 636, 640 & n.4 (App. 1998).  If the injury is not attributable to a violation, then a negligence standard applies.  *See Calnimptewa v. Flagstaff Police Dept.*, 200 Ariz. 567, ¶ 28, 30 P.3d 634, 639 (App. 2001), *citing* Restatement (Second) of Torts § 314A(4) (1965).

**¶12**        Fleming argues the term "driver" is limited to one who is actively driving.  Although the statute is silent on the definition of

---

    [1]Fleming also appeared to contend at oral argument that the determination of whether an injury is "attributable to" DUI can never be delegated to the jury because the application of a qualified immunity is a question of law.  Issues raised for the first time at oral argument are waived absent fundamental error.  *State v. Murdaugh*, 209 Ariz. 19, ¶ 29, 97 P.3d 844, 851 (2004).  But we find no error, fundamental or otherwise, as this issue is resolved by *DeVries v. State*, 221 Ariz. 201, ¶¶ 24-26, 211 P.3d 1185, 1192 (App. 2009) (court applies qualified immunity if jury finds factual prerequisites).

"driver" for qualified immunity purposes, we disagree with Fleming's contention that it can only apply to a person injured while in the act of driving. If the legislature has not defined a word in a statute, we will consider the definitions of respected dictionaries. *DeVries*, 221 Ariz. 201, ¶ 21, 211 P.3d at 1191. The American Heritage Dictionary defines "driver" as "[o]ne that drives, as the operator of a motor vehicle." *The American Heritage Dictionary* 548 (5th ed. 2011). This definition closely tracks with the definition our legislature has employed in title 28: "'Driver' means a person who drives or is in actual physical control of a vehicle."[2] § 28-101(18). Notably, in both definitions, the term "driver" does not require that one be in the act of driving; rather, it describes a person who drives. If the legislature had intended to limit application of § 12-820.02(A)(7) to persons actively driving at the time of injury, it could have included language to that effect. Indeed, Fleming's interpretation would require the implicit insertion of additional language. But it is not the function of the courts to rewrite statutes, and we must not substitute our judgment for that of the legislature. *City of Phoenix v. Butler*, 110 Ariz. 160, 162, 515 P.2d 1180, 1182 (1973).

¶13 The term "driver" also serves to limit the class of claimants against whom the state could assert a qualified immunity. *See Doe ex rel. Doe v. State*, 200 Ariz. 174, ¶ 4, 24 P.3d 1269, 1271 (2001) (governmental liability immunity provisions construed narrowly). For instance, as the state acknowledged at oral argument, if a passenger in Mascolino's vehicle also had been placed in the patrol car, the qualified immunity would not have applied to the passenger's claim for injuries because that person was not an intoxicated driver. Without the inclusion of the term "driver," the

[2]Subsections 28-101(17) and (18), A.R.S., define "drive" and "driver" only within title 28. These definitions, while perhaps persuasive, are not mandatory with respect to § 12-820.02(A)(7) as appellant contends. Even were we to assume that § 28-101(18) defined "driver" for purposes of § 12-820.02(A)(7), Mascolino still fell within that definition, including at the time of her death. *See* § 28-101(18) ("driver" is one who "drives," not one who "is driving").

qualified immunity arguably might apply to many people affected by or who interacted with the person driving the vehicle while intoxicated.

¶14        Fleming's principal argument is that no reasonable jury could have found that Mascolino's death was attributable to DUI. He therefore maintains the trial court erred as a matter of law in even allowing the possibility[3] that the jury might measure the conduct of DPS against a lower standard of care than negligence. The court instructed the jury to determine whether Mascolino violated §§ 28-693, 28-1381, or 28-1382[4] and, if so, to determine whether her death was attributable to that violation.[5] The jury was further instructed that if it found both conditions existed, it could return a verdict for the plaintiffs only upon a finding of gross negligence or intent to injure.  Fleming argues this interpretation of § 12-820.02(A)(7) is untenable because it leads to what he characterizes as an absurd result:  a standard of care for DPS officers that varies depending on the crime that the suspect in their custody

_____

[3] Neither party requested an interrogatory to determine whether the jury found Mascolino's death attributable to her DUI.  It is possible, therefore, that the jury verdict for DPS was based on the conclusion that the conduct of the officers was not negligent. Because the record does not establish which standard of proof applied, we assume for the purpose of argument that the jury found Mascolino's death was attributable to her DUI violation, which mandated proof greater than negligence.

[4] The relevant portions of these statutes were included in full in the jury instructions.

[5] "[A]ttributable to" was not defined in the jury instructions just as it is not defined in § 12-820.02(A)(7).  The court did not err when it left the interpretation of "attributable to" to the common sense of the jury and their knowledge of the ordinary usage of the English language.  *Cf. DeVries*, 221 Ariz. 201, ¶ 21, 211 P.3d at 1191 (construing "attributable to" by reference to respected dictionaries); *see also State v. Dann*, 220 Ariz. 351, ¶ 88, 207 P.3d 604, 621 (2009) (jury to apply ordinary meaning of word if undefined).

is suspected of having committed. For instance, Fleming notes that if Mascolino had been arrested for public drunkenness after DPS officers had observed her walking intoxicated along the highway, then § 12-820.02(A)(7) would not apply and Fleming could recover upon a showing of ordinary negligence. But because Mascolino was arrested for DUI or under the extreme DUI, § 12-820.02(A)(7) applied and plaintiffs needed to show at least gross negligence.

¶15 First, we disagree with Fleming's claim that this is an absurd result. The legislature reasonably could have concluded that qualified immunity against actions brought by intoxicated drivers would discourage drinking and driving. *See State v. Poshka*, 210 Ariz. 218, ¶ 13, 109 P.3d 113, 117 (App. 2005) (noting state's strong public policy interest in preventing DUI-related death and injury). Second, and more important, such a policy determination is a matter for the legislature, not the court. *See Clouse ex rel. Clouse v. State*, 199 Ariz. 196, ¶¶ 20, 26, 16 P.3d 757, 763-64 (2001) ("[W]e consistently have recognized the power of the legislature to retain or confer immunity where appropriate."); *Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303, ¶ 24, 63 P.3d 1040, 1047 (App. 2003) (legislature better positioned to address policy concerns than courts); *see also* Ariz. Const. art. IV, pt. 2, § 18; *DeVries*, 221 Ariz. 201, ¶¶ 13-14, 211 P.3d at 1189-90. In short, to the extent Fleming asserts that § 12-820.02(A)(7) is bad public policy, it is an argument better directed to the legislature than the court. *Clouse*, 199 Ariz. 196, ¶ 26, 16 P.3d at 764; *DeVries*, 221 Ariz. 201, ¶ 16, 211 P.3d at 1190. It is not our prerogative to rewrite a statute under the guise of judicial interpretation. *Tucson Unified Sch. Dist. v. Borek ex rel. Cnty. of Pima*, 234 Ariz. 364, ¶ 11, 322 P.3d 181, 185 (App. 2014).

¶16 Fleming alternatively contends that unless qualified immunity is limited to a person actually driving or in physical control of a vehicle, the result we reach implies a but-for analysis of unlimited scope. Specifically, if the state is entitled to a qualified immunity instruction grounded on the bare contention that a DUI violation initiated a chain of events, then every injury subsequent to the DUI might be held to a higher standard of proof. For instance, a DUI arrestee might be injured in a slip and fall during booking. Nothing in our decision, however, should be read to preclude a trial

court from refusing to give a qualified immunity instruction after concluding that no reasonable jury could find the driver's injury attributable to the DUI violation. *Cf. Patterson v. Thunder Pass, Inc.*, 214 Ariz. 435, ¶ 19, 153 P.3d 1064, 1069 (App. 2007) (legal causation chain broken by events too attenuated).

¶17        In contrast to the hypotheticals Fleming poses, there were sufficient facts to refer this matter to the jury. For instance, Mascolino's BAC was more than three times the legal limit. Her vehicle drifted across lane lines and travelled well below the posted speed limit. When the officer attempted a traffic stop, Mascolino refused to yield and then drove erratically for more than a mile before she stopped on the approach to a freeway overpass. Mascolino's failure to yield to the officer initially caused the DUI investigation to occur in a position on the freeway not chosen by the officer. Based on these facts, a reasonable jury could have found that Mascolino's death was attributable to her DUI violation.

**Admission of PBT and BAC Results**

¶18        Fleming next argues the trial court erred by admitting test results showing Mascolino's breath and post-mortem BAC. Fleming contends that admitting the evidence was error because (1) the test results were irrelevant under Rule 401, Ariz. R. Evid., and (2) their prejudicial effect substantially outweighed their probative value pursuant to Rule 403, Ariz. R. Evid. We review a court's decision to admit evidence for an abuse of discretion or a prejudicial error of law. *TM2008 Invs., Inc. v. Procon Capital Corp.*, 234 Ariz. 421, ¶ 12, 323 P.3d 704, 707 (App. 2014).

¶19        Evidence is relevant if it has any tendency to make any fact of consequence more or less probable. Ariz. R. Evid. 401. Mascolino's test results were directly relevant to the consequential issue of whether she had violated A.R.S. §§ 28-1381 or 28-1382, a predicate to the application of qualified immunity. *See* §§ 28-1381(A)(2), 28-1382(A) (listing minimum numerical alcohol concentration values as elements of offenses); § 12-820.02(A)(7); *see also Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 496, 733 P.2d 1073, 1079 (1987) (pleadings and substantive law determine facts of consequence for relevance purposes). These results also were

relevant to the jury's allocating relative fault among the parties. *See Zuern v. Ford Motor Co.*, 188 Ariz. 486, 492, 937 P.2d 676, 682 (App. 1996) (trial court did not err in admitting evidence bearing on party's degree of fault, including evidence of intoxication). Thus, the trial court did not abuse its discretion in determining that the forensic evidence was relevant. *See id.*

¶20 Fleming also argues the tests were improperly admitted because the results were both unduly inflammatory and needlessly cumulative under Rule 403, Ariz. R. Evid. Relevant evidence is admissible unless otherwise prohibited by law. Ariz. R. Evid. 402. But if the probative value of the evidence is "substantially outweighed" by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence, the court may exclude the evidence even if relevant. Ariz. R. Evid. 403.

¶21 Here, the numerical BrAC and BAC results were probative as to whether Mascolino's alcohol concentration was above the statutory thresholds in §§ 28-1381 and 28-1382. They were admissible, in part, because Fleming contested the degree to which Mascolino was intoxicated. Indeed, B.D. testified that she had not noticed Mascolino drinking excessive amounts of alcohol on prior similar outings and that on the night of the incident, neither she nor Mascolino believed that Mascolino was unfit to drive.

¶22 Thus, the trial court did not abuse its discretion by allowing DPS to introduce the BrAC and BAC numbers in order to rebut plaintiff's suggestion that Mascolino might not have been drinking excessively or might not have been impaired. The evidence was properly admitted to allow the state to prove its affirmative defenses and to provide the jury with a complete picture of relevant facts by which to judge the reasonableness of the officers' actions in conducting the traffic stop.

## Disposition

¶23 For the foregoing reasons, the judgment of the trial court is affirmed.