IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

ROBERT FLEMING, CONSERVATOR, ON BEHALF OF THE SURVIVING
MINOR CHILDREN OF FAITH MASCOLINO,
*Plaintiff/Appellant,*

*v.*

STATE OF ARIZONA DEPARTMENT OF PUBLIC SAFETY,
*Defendant/Appellee.*

No. CV-14-0315-PR
Filed July 9, 2015

Appeal from the Superior Court in Pima County
The Honorable Ted B. Borek, Judge
No. C20095459
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
236 Ariz. 210, 337 P.3d 1192 (App. 2014)
**VACATED IN PART**

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Daniel P. Schaack (argued), Assistant Attorney General, Phoenix; and Robert R. McCright, Assistant Attorney General, Tucson, Attorneys for State of Arizona

Ronald D. Mercaldo, Carlo Mercaldo, Mercaldo Law Firm, Tucson; Thomas A. Zlaket (argued), Thomas A. Zlaket, PLLC, Tucson; and JoJene E. Mills, Law Office of JoJene Mills, PC, Tucson, Attorneys for Robert Fleming, Conservator, on behalf of the surviving minor children of Faith Mascolino

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, JUSTICES BERCH and BRUTINEL, and JUDGE GOULD* joined.

———————————

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        Under A.R.S. § 12-820.02(A)(7), public entities and employees enjoy qualified immunity from liability for an injury to a motor-vehicle driver that is attributable to the driver's violation of statutes prohibiting reckless driving and driving while under the influence of alcohol or drugs. Today we hold that § 12-820.02(A)(7)'s qualified immunity applies only when the driver was injured while driving or in actual physical control of a motor vehicle.

**I.**

¶2        The material facts are undisputed. Department of Public Safety ("DPS") Officer Scott Walter observed a vehicle driven by Faith Mascolino drifting across traffic lanes and traveling well below the speed limit on Interstate 10. He called for backup and attempted to pull Mascolino over, but she failed to yield and continued driving erratically. She eventually stopped in the emergency lane, close to a guardrail on the rising approach to a freeway overpass. As Officer Walter spoke with Mascolino, she exhibited signs of intoxication and admitted that she had been drinking "a lot" that night.

¶3        DPS Officer Fred Rivera arrived on the scene and attempted to administer field-sobriety tests, which Mascolino could not complete. Officer Rivera arrested Mascolino for driving while under the influence and placed her in the rear seat of his DPS cruiser. Mascolino submitted to a portable breath test at Officer Rivera's request, which registered her breath-alcohol concentration well above the legal limit.

¶4        Officer Rivera began calling Mascolino's family members to find someone who could retrieve her vehicle. While he was on the phone (about twenty minutes after placing Mascolino in custody), a vehicle driven by Robert Gallivan approached the freeway overpass at high speed, moving diagonally from the middle lane toward the emergency lane. Officer Walter shouted a warning to Officer Rivera, and both of them managed to jump over the guardrail just in time to avoid being struck. Gallivan's vehicle crashed into the cruiser in which Mascolino was seated, and she died on impact. The

———————————

*     Justice Ann A. Scott Timmer recused herself from this case. Pursuant to Article 6, Section 3, of the Arizona Constitution, the Honorable Andrew W. Gould, Judge of the Court of Appeals, Division One, was designated to sit in this matter.

officers testified that they had approximately one second to react to Gallivan's vehicle and no time to rescue Mascolino before the collision.

¶5        The conservator for Mascolino's minor children, Robert Fleming, filed this wrongful death action against Gallivan and DPS.  Before trial, DPS moved for a jury instruction on qualified immunity under § 12-820.02(A)(7).  Fleming objected, contending that the statute was inapplicable because Mascolino was neither driving nor in control of her vehicle when the collision occurred.  The trial court ruled that DPS would be allowed to present evidence supporting the requested jury instruction, but deferred deciding whether the instruction would be given.

¶6        At the close of evidence, the court decided to instruct the jury on § 12-820.02(A)(7)'s qualified immunity and related statutes.  The jury returned a verdict in favor of Fleming, finding Gallivan seventy-five percent at fault, Mascolino twenty-five percent at fault, and assigning no fault to DPS.

¶7        The court of appeals affirmed, upholding the giving of the § 12-820.02(A)(7) instruction.  *Fleming v. Ariz. Dep't of Pub. Safety*, 236 Ariz. 210, 211 ¶ 1, 337 P.3d 1192, 1193 (App. 2014).  The court concluded that Mascolino was a "driver" under the statute and that the record contained sufficient evidence from which a reasonable juror could have found her death "attributable to" her driving while under the influence.  *Id.* at 213 ¶ 12, 215 ¶ 17, 337 P.3d at 1195, 1197.  We granted review because the interpretation of § 12-820.02(A)(7) is an issue of first impression and statewide importance.  We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶8        Since this Court abolished sovereign immunity in 1963, public entities such as DPS generally have been liable for injuries they negligently cause.  *See Glazer v. State*, 237 Ariz. 160, 163 ¶ 10, 347 P.3d 1141, 1144 (2015).  Consequently, under our common law, when DPS takes custody of someone in a manner that deprives the person of the opportunity for self-protection, it assumes a duty to protect that person against unreasonable risk of physical harm.  *See DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 11, 695 P.2d 255, 260 (1985); Restatement (Second) of Torts § 314A(1)(a), (4) (1965).  "The duty to protect the other against unreasonable risk of harm extends to risks arising out of . . . the acts of third persons, whether they be innocent, negligent, intentional, or even criminal[,] . . . [and] also to risks arising from pure accident, or from the negligence of the plaintiff [her]self . . . ."  Restatement (Second) of Torts § 314A cmt. d; *see also DeMontiney*, 144 Ariz. at 11, 695 P.2d at 260.

3

¶9         The legislature, however, enacted limited statutory exceptions to the general liability of governmental entities for tortious conduct. *See Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 199 ¶ 13, 16 P.3d 757, 760 (2001) (describing the legislature's enactment of the Actions Against Public Entities or Public Employees Act (the "Act"), codified at A.R.S. §§ 12-820 to -826, providing for absolute immunity, qualified immunity, and affirmative defenses for public entities and employees). One of those exceptions is found in § 12-820.02(A)(7):

> Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for . . . [a]n injury to the driver of a motor vehicle that is attributable to the violation by the driver of § 28-693, 28-1381 or 28-1382.

The title 28 statutes referenced in § 12-820.02(A)(7) prohibit reckless driving, § 28-693; driving while under the influence, § 28-1381; and driving while under the extreme influence, § 28-1382.

¶10         Section 12-820.02(A)(7)'s language implies a two-part test for determining whether the statute's qualified immunity applies: first, there must have been "[a]n injury to the driver of a motor vehicle"; second, that injury must be "attributable to" the driver's violation of one of the specified title 28 statutes. If the two-part test is satisfied, the public entity cannot be held liable unless it acted with gross negligence or intentionally, instead of being held to the ordinary negligence standard of reasonable care. *See* A.R.S. § 12-820.02(A)(7); *Glazer*, 237 Ariz. at 163 ¶ 11, 347 P.3d at 1144 ("The Act leaves intact the common-law rule that the government is liable for its tortious conduct unless immunity applies.").

¶11         Fleming contends that the trial court erred by instructing the jury on § 12-820.02(A)(7), arguing that neither part of the statute was met. *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 539, 647 P.2d 1127, 1137 (1982) (finding it "reversible error to instruct the jury on a legal theory which is not supported by the evidence"). "When a jury instruction is challenged, we must view the evidence in [the] light most favorable to the party who requested the instruction." *Jones v. Munn*, 140 Ariz. 216, 218, 681 P.2d 368, 370 (1984). But the proper interpretation of a statute on which the court instructs the jury is a legal issue we review de novo. *See Glazer*, 237 Ariz. at 163 ¶ 12, 347 P.3d at 1144.

**A.**

¶12        We first address whether Mascolino was a "driver of a motor vehicle" under § 12-820.02(A)(7) when Gallivan crashed into the DPS cruiser in which she was seated in the rear.  "If a statute is unambiguous, we apply its terms without resorting to other tools of statutory interpretation, unless doing so leads to impossible or absurd results."  *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182 ¶ 9, 337 P.3d 545, 547 (2014).  "Words in statutes, however, cannot be read in isolation from the context in which they are used."  *J.D. v. Hegyi*, 236 Ariz. 39, 41 ¶ 6, 335 P.3d 1118, 1120 (2014).  And when statutes relate to the same subject matter, we construe them together as though they constitute one law and attempt to reconcile them to give effect to all provisions involved.  *Bell v. Indus. Comm'n*, 236 Ariz. 478, 480 ¶ 7, 341 P.3d 1149, 1151 (2015).  If we conclude that the language is ambiguous, "we may consider the statute's subject matter, legislative history, and purpose, as well as the effect of different interpretations, to derive its meaning."  *Id.*

¶13        Neither § 12-820.02 nor § 12-820 ("Definitions") defines the word "driver."  The court of appeals therefore appropriately consulted a dictionary defining "driver" as "[o]ne that drives, as the operator of a motor vehicle."  *Fleming*, 236 Ariz. at 213 ¶ 12, 337 P.3d at 1195 (alteration in original) (quoting The American Heritage Dictionary 548 (5th ed. 2011)); *see State v. Pena*, 235 Ariz. 277, 279 ¶ 6, 331 P.3d 412, 414 (2014) ("Absent statutory definitions, courts apply common meanings and may look to dictionaries." (citations omitted)).  Based on that definition, the court concluded that "the term 'driver' does not require that one be in the act of driving; rather, it describes a person who drives." *Fleming*, 236 Ariz. at 213 ¶ 12, 337 P.3d at 1195.  The court reasoned that "[i]f the legislature had intended to limit application of § 12-820.02(A)(7) to persons actively driving at the time of injury, it could have included language to that effect . . . [and] it is not the function of the courts to rewrite statutes."  *Id.*

¶14        The word "driver" in § 12-820.02(A)(7), however, also reasonably lends itself to a different interpretation.  The definition of driver as "one that drives" does not necessarily include one who merely drove in the past.  To "drive" is commonly understood to mean "an act of driving."  Webster's Ninth New Collegiate Dictionary 384 (1983).  A "driver," being "one that drives," *id.*, can therefore be fairly understood to mean someone who does "an act of driving."  Consistent with these definitions, once the act of driving ends, the person is no longer one who drives and thus not a driver.  For purposes of the statute then, an injury to a person who is no longer driving is not "[a]n injury to the driver of a motor vehicle."  A.R.S. § 12-820.02(A)(7).  This alternative, reasonable reading does not require any rewriting of the statute.

¶15        The court of appeals further reasoned that "while perhaps persuasive," the definitions of "drive" and "driver" in title 28 "are not mandatory with respect to § 12-820.02(A)(7)." *Fleming*, 236 Ariz. at 213 ¶ 12 n.2, 337 P.3d at 1195 n.2. The court nonetheless remarked that its conclusion that "driver" in § 12-820.02(A)(7) does not require the person to be in the act of driving "closely tracks" the title 28 definition of a driver as "a person who drives or is in actual physical control of a vehicle." *Id.* at 213 ¶ 12, 337 P.3d at 1195 (quoting A.R.S. § 28-101(18)).

¶16        As the court of appeals correctly observed, § 28-101 defines "drive" and "driver" for title 28 purposes. *See* A.R.S. § 28-101(17)–(18). But we disagree that the court of appeals' construction of "driver" in § 12-820.02(A)(7) closely tracks the title 28 counterpart in anything but language. Reading "a person who drives" in the title 28 definition of "driver" to encompass someone who has driven in the past strains its meaning when what follows—"or *is* in actual physical control"—is clearly stated in and limited to the present tense. A.R.S. § 28-101(18) (emphasis added). In *State v. Zaragoza*, we explained that "[f]or many years the legislature limited Arizona's driving while intoxicated statute to *actual driving* . . . [but] [i]n 1950, the legislature extended the statute to [also] prohibit 'actual physical control' . . . to include *more than just driving*." 221 Ariz. 49, 51 ¶¶ 7–8, 209 P.3d 629, 631 (2009) (emphasis added). Consistent with *Zaragoza*, a "driver" under title 28 is a person who is driving or in actual physical control of a vehicle. It does not include one who is neither in the act of driving nor in actual physical control of a vehicle.

¶17        Moreover, although the title 28 definition of "driver" applies to title 28, it is reasonable to interpret "driver" in § 12-820.02(A)(7) to conform with that definition. Section 12-820.02(A)(7) not only refers to the title 28 statutes of §§ 28-693, -1381, and -1382, but would also be meaningless without that reference. *See* A.R.S. § 12-820.02(A)(7) ("An injury to the driver of a motor vehicle that is attributable to the violation by the driver of [. . .] ."). This militates toward reading § 12-820.02(A)(7) together with the title 28 statutes as though they constituted one law and reconciling them to give effect to all provisions involved. *See Bell*, 236 Ariz. at 480 ¶ 7, 341 P.3d at 1151. So construed, "[a]n injury to the driver of a motor vehicle" in § 12-820.02(A)(7) means an injury to a person who is driving or in actual physical control of a vehicle when she is injured. *See* A.R.S. §§ 12-820.02(A)(7); 28-101(17)–(18); *Zaragoza*, 221 Ariz. at 51 ¶¶ 7–8, 209 P.3d at 631. We thus disagree with the court of appeals' conclusion that § 12-820.02(A)(7) necessarily encompasses an injury to a person who drove at some point in the past. *See Fleming*, 236 Ariz. at 213 ¶ 12, 337 P.3d at 1195.

**¶18**          As the discussion above demonstrates, the term "driver" as used in § 12-820.02(A)(7) is reasonably susceptible to differing interpretations and therefore ambiguous.  It is well established, however, that "[s]ince immunity is the exception and not the rule, . . . judicial construction of immunity provisions in statutes applicable to government entities should be restrained and narrow." *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 225 ¶ 7, 954 P.2d 580, 583 (1998) (citing *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 164, 920 P.2d 41, 44 (1996)); *see also Glazer*, 237 Ariz. at 163 ¶ 12, 347 P.3d at 1144 ("Because § 12-820.03 bars recovery against public entities if the defense is proven, we construe it narrowly."); *Doe ex rel. Doe v. State*, 200 Ariz. 174, 176 ¶ 4, 24 P.3d 1269, 1271 (2001) ("[Courts] construe immunity provisions narrowly."). Narrowly construing immunity provisions, including § 12-820.02(A)(7), respects the legislature's statement of purpose and intent in enacting them:

> [I]t is hereby declared to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state.  All of the provisions of this act should be construed with a view to carry out the above legislative purpose.

1984 Ariz. Sess. Laws, ch. 285, § 1(A) (2d Reg. Sess.).

**¶19**          Under the court of appeals' interpretation of § 12-820.02(A)(7), qualified immunity applies if an injury to the "driver of a motor vehicle" occurs either while the driver is driving or  at any time after the driver is no longer driving, as long as the driver's injury is found to be attributable to his or her violation of the title 28 statutes. *See Fleming*, 236 Ariz. at 213 ¶ 12, 337 P.3d at 1195.  Under our interpretation, the injury must occur while the driver is driving or in actual physical control of the motor vehicle.  This latter interpretation represents a narrower application of the statute, without undermining the legislature's grant of qualified immunity, *see Greenwood v. State*, 217 Ariz. 438, 443 ¶ 16, 175 P.3d 687, 692 (App. 2008) (stating that courts may not "construe an immunity provision so narrowly as to abrogate the legislature's grant of immunity"), and while remaining consistent with the court of appeals' application of § 12-820.02(A)(7) in *DeVries v. State,* in which the driver suffered injury while driving, 221 Ariz. 201, 203 ¶ 2, 211 P.3d 1185, 1187 (App. 2009).

**¶20**          Accordingly, we hold that "[a]n injury to the driver of a motor vehicle" in § 12-820.02(A)(7) means an injury to a person who is driving or in actual physical control of a motor vehicle when she is injured.  The trial court erred by instructing the jury on § 12-820.02(A)(7), because on this record no reasonable juror could find (nor does DPS suggest) that Mascolino was either driving or in actual physical control of a vehicle when Gallivan collided with the DPS cruiser in which she died.

**B.**

**¶21** Because we hold that § 12-820.02(A)(7) was inapplicable as Mascolino was not a driver of a motor vehicle at the relevant time, we leave for another day the interpretation of "attributable to" in the same statute. It is better to address that issue in a case in which it is squarely presented—that is, where the injured person was a "driver."

**III.**

**¶22** We vacate ¶¶ 9–17 and 23 of the court of appeals' opinion, reverse the judgment of the superior court, and remand this case to that court for further proceedings.