IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

―――――――

**MARCIE A. REDGRAVE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff/Appellant,*

*v.*

**DOUG DUCEY, GOVERNOR; THOMAS J. BETLACH, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM; ARIZONA DEPARTMENT OF ECONOMIC SECURITY; ARIZONA DIVISION OF DEVELOPMENTAL DISABILITIES,**
*Defendants/Appellees.*

―――――――

No. CV-20-0082-CQ
Filed August 19, 2021

―――――――

United States District Court for the District of Arizona
No. D.C. 2:18-cv-01247-DLR

Certified Question from the
United States Court of Appeals for the Ninth Circuit
953 F.3d 1123 (2020)
**QUESTION ANSWERED**

―――――――

COUNSEL:

Nicholas J. Enoch, Stanley Lubin, Kaitlyn A. Redfield-Ortiz (argued), Lubin & Enoch, P.C., Phoenix, Attorneys for Marcie A. Redgrave

J. Mark Ogden, Littler Mendelson, P.C., Phoenix, Attorneys for Doug Ducey; and Mark Brnovich, Arizona Attorney General, Drew C. Ensign, Deputy Solicitor General, (argued), Robert J. Makar, Assistant Attorney General, Phoenix, Attorneys for Thomas J. Betlach, Arizona Department of Economic Security, and Arizona Division of Developmental Disabilities

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix; Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson; and Daniel J. Adelman, Arizona Center for Law in the Public Interest, Phoenix, Attorneys

for Amici Curiae Arizona Center for Law in the Public Interest and Arizona Association for Justice/Arizona Trial Lawyers Association

Edmundo P. Robaina, Robaina & Kresin PLLC, Phoenix; and Ty D. Frankel, Bonnett, Fairborn, Friedman & Balint, P.C., Phoenix, Attorneys for Amicus Curiae Kimberly Spitler

CHIEF JUSTICE BRUTINEL authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.[*]

_____

CHIEF JUSTICE BRUTINEL, opinion of the Court:

**¶1**        The United States Court of Appeals for the Ninth Circuit certified the following question to this Court: Has Arizona consented to damages liability for a state agency's violation of the minimum wage or overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206–207?

**¶2**        The Arizona Constitution gives the legislature the authority to waive Arizona's sovereign immunity, and the legislature has not unequivocally consented to federal damages liability.  Therefore, we hold that Arizona has not consented to such liability under the FLSA.

## I.   BACKGROUND

**¶3**        Marcie Redgrave claims the State[1] violated the FLSA by failing to pay minimum wage and overtime compensation to state-employed in-home caretakers like herself, who provide around-the-clock care to beneficiaries of the Arizona Long-Term Care System.  In February 2018, Redgrave filed a putative class action complaint to that effect in Maricopa County Superior Court.  The State removed the case to federal court, asserted its sovereign immunity, and moved to dismiss.  After rejecting Redgrave's contentions that (1) the State waived its sovereign

_____

[*] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this opinion and did not take part in its drafting.

[1] For simplicity, we refer to the four Defendants/Appellees collectively as "the State."

immunity by removing the case to federal court and (2) Arizona has waived its sovereign immunity as a matter of law, the district court dismissed Redgrave's claims. Redgrave appealed.

¶4 Finding no controlling Arizona precedent addressing the State's assertion of sovereign immunity to damages liability under the FLSA, the Ninth Circuit certified the above-stated question to this Court. *Redgrave v. Ducey*, 953 F.3d 1123, 1127–28 (9th Cir. 2020) (mem. decision).[2]

¶5 We agreed to answer the question, and we have jurisdiction under article 6, section 5(6) of the Arizona Constitution, A.R.S. § 12-1861, and Arizona Supreme Court Rule 27.

## II. DISCUSSION

¶6 The Arizona Constitution provides that "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." Ariz. Const. art. 4, pt. 2, § 18. In so doing, it grants to the legislature "express authority . . . to define those instances in which public entities and employees are entitled to immunity." *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 203 ¶ 25 (2001). The issue here is whether the legislature, in exercising this power, has consented to damages liability under the FLSA. It has not.

### A. Standard for Sovereign Immunity Waivers

¶7 Before assessing whether the State has consented to be sued, we first must address the more difficult question of what is required to waive sovereign immunity in Arizona.

¶8 "Dual sovereignty is a defining feature of our Nation's constitutional blueprint." *Sossamon v. Texas*, 563 U.S. 277, 283 (2011). Sovereign immunity bolsters this arrangement by restricting federal jurisdiction over suits against nonconsenting states. *Id.* at 284. "A State . . . may choose to waive its immunity in federal court at its pleasure." *Id.* Yet such immunity is not confined to cases filed in federal court. The Supreme Court has recognized sovereign immunity in state courts as well: "the

---

[2] The Ninth Circuit declined to address Redgrave's waiver-by-removal argument before certifying the instant question to this Court. *Redgrave*, 953 F.3d at 1125.

powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." *Alden v. Maine*, 527 U.S. 706, 712 (1999). Absent its consent, then, a state generally remains constitutionally immune from liability for federally created causes of action in its own courts as well.[3] *Alden*, 527 U.S. at 754; *accord Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense.").

¶9        Each of the parties here advances its own theory of what is required to evidence consent to be sued. In the State's view, we should employ the same standard applied by federal courts, upon whom the Supreme Court has imposed a "stringent" requirement that consent be "'unequivocally expressed' in the text of the relevant statute" — in this case, the Actions Against Public Entities and Public Employees Act (the "Act"), A.R.S. §§ 12-820 to 12-826. *See Sossamon*, 563 U.S. at 283 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). This approach demands more than a state's consent to suit in its own courts, or even "in any court of competent jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). Any waiver must be explicit, resolving all ambiguity in favor of preserving immunity. *Sossamon*, 563 U.S. at 285.

¶10        Redgrave favors a less exacting approach.[4] Echoing the Ninth Circuit's Certification Order, she contends that we "flipped the traditional rule," *see Redgrave*, 953 F.3d at 1127, by holding that, when construing the

---

[3] In limited instances, Congress alternatively may abrogate state immunity using its enforcement power under the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 5; *Alden*, 527 U.S. at 756. Abrogation is not at issue here.

[4] Redgrave passingly suggests that the Supreme Court's unequivocal expression standard only applies to waivers of the federal government's sovereign immunity. Not so; although it does apply to federal immunity waivers, *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." (citations omitted)), states generally enjoy the same presumption, *Sossamon*, 563 U.S. at 284–85 (applying identical rule to state immunity waiver).

Act's immunity provisions, "governmental liability is the rule in Arizona and immunity is the exception," *see Doe ex rel. Doe v. State*, 200 Ariz. 174, 176 ¶ 4 (2001). We disagree.

¶11 Context gainsays Redgrave's view that the Act's rule favoring government liability extends to claims for federal damages. The Arizona Constitution expressly assigns to the legislature the role of setting the parameters of state sovereign immunity. *See* Ariz. Const. art. 4, pt. 2, § 18; *Clouse*, 199 Ariz. at 203 ¶ 25. Our presumption of liability respects this authority. In fact, it mirrors the Act's statement of purpose and intent, which declares it "the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state" and instructs courts to construe the Act accordingly. 1984 Ariz. Sess. Laws, ch. 285, § 1(A) (2d Reg. Sess.). But that same statement prevents us from applying this presumption beyond claims arising from "the statutes and common law of this state." *Cf. Fleming v. State Dep't of Pub. Safety*, 237 Ariz. 414, 418 ¶¶ 18–19 (2015) (crediting legislative statement of purpose and intent for pro-liability presumption); *Doe*, 200 Ariz. at 175–76 ¶ 4 (same); *Fidelity Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224–25 ¶ 7 (1998) (same). To hold otherwise would diminish the legislature's constitutional role in administering Arizona's sovereign immunity while inadvertently aggrandizing federal power over state affairs. *See Welch v. Tex. Dep't of Highways & Pub. Trans.*, 483 U.S. 468, 473–74 (1987) ("[A] State does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts."). We decline to reach such a result absent clear consent.

¶12 Our pre-Act abolition of governmental immunity in *Stone v. Arizona Highway Commission* does not require us to accept Redgrave's reading of the Act. *See* 93 Ariz. 384, 392 (1963). In fact, our holding in *Stone* suggests any presumption favoring governmental liability originally extended only to common law tort claims. *See id.* at 387 ("After a thorough re-examination of the rule of governmental immunity *from tort liability*, we now hold that it must be discarded as a rule of law in Arizona and all prior decisions to the contrary are hereby overruled." (emphasis added)); *see also id.* at 388 n.1 ("The whole doctrine of governmental immunity *from liability for tort* rests upon a rotten foundation." (quoting Annotation, *Rule of municipal immunity from liability for acts in performance of governmental functions as applicable in case of personal injury or death as result of a nuisance*, 75 A.L.R. 1196 (1931)) (emphasis added)). And we have eschewed

5

subsequent invitations to read *Stone* more expansively. *See Clouse*, 199 Ariz. at 202 ¶ 20 ("Although our decisions since *Stone* follow a somewhat circuitous route, we have never suggested that *Stone* prohibits all forms of governmental immunity. To the contrary, we consistently have recognized the power of the legislature to retain or confer immunity where appropriate."); *cf. Backus v. State*, 220 Ariz. 101, 104 ¶ 9 (describing Act as codification of *Stone*). We do so again today.

¶13 No Arizona court has suggested that either the Act or *Stone* made the State presumptively liable for federal damages. Instead, we have regularly applied the Act only to state-law claims. *See, e.g., Fleming*, 237 Ariz. at 418–19 ¶¶ 18–20 (presumption applies to wrongful death claim); *County of La Paz v. Yakima Compost Co., Inc.*, 224 Ariz. 590, 602–03 ¶¶ 33–34 (App. 2010) (breach of contract, covenant of good faith and fair dealing); *Greenwood v. State*, 217 Ariz. 438, 442–45 ¶¶ 14–22 (App. 2008) (negligence); *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 163–64 (App. 1996) (same); *Goss v. City of Globe*, 180 Ariz. 229, 232–33 (App. 1994) (same).

¶14 Federal courts have also recognized this distinction. *See Ramirez v. Ariz. State Treasurer*, No. CV-17-02024-PHX-SPL, 2018 WL 6348411, at *1 (D. Ariz. June 20, 2018) ("Because the Arizona Legislature has not passed any law *explicitly* consenting to private claims under the FLSA, the Court finds no statutory waiver of immunity."); *Wennihan v. AHCCCS*, 515 F. Supp. 2d 1040, 1049 (D. Ariz. 2005) (no evidence of Arizona waiver of constitutional immunity to federal liability); *see also Ronwin v. Shapiro*, 657 F.2d 1071, 1074 (9th Cir. 1981) ("[T]here is no indication in the [*Stone*] opinion that Arizona intended to consent to anything more than suit in its own courts."); *Strojnik v. State Bar of Ariz.*, 446 F. Supp. 3d 566, 573 (D. Ariz. 2020) ("*Stone* . . . does not address suits against Arizona in *federal court*, but rather addresses suits against Arizona in *state court*."); *King v. Arizona*, No. CV09–8062–PHX–DGC, 2010 WL 3219139, at *2 (D. Ariz. Aug. 13, 2010) ("[*Stone*] does not address suits against a state in federal court, but rather addresses suits against the State of Arizona in state court.").

¶15 This is also the case in other states, whose legislatures, like ours, responded to the judicial abolition of common law immunity with some statutory reassertion of that protection. *See Clouse*, 199 Ariz. at 199 ¶ 14 ("Although most states have waived their sovereign immunity, either through judicial abrogation or legislative waiver, all fifty states have enacted some form of a 'Tort Claims Act' to define, and sometimes to re-establish, the parameters of governmental liability."). Moreover, of those

states whose constitutions include immunity clauses, most have held that such a provision "'constitutionalizes' the doctrine of sovereign immunity and confers upon the legislature the exclusive authority to waive sovereign immunity and that, absent legislative action, suits against the state cannot proceed." *Id.* at 200 ¶ 16; *see also id.* at 200 ¶ 16 n.8 (collecting cases).

¶16 We think New Mexico's approach is persuasive. After its supreme court abolished common law sovereign immunity, *see Hicks v. State*, 544 P.2d 1153, 1155–57 ¶¶ 7–13 (N.M. 1975), New Mexico's legislature responded by passing statutes reasserting state immunity from certain contract actions, *see* N.M. Stat. § 37-1-23, and from tort liability, *see* N.M. Stat. §§ 41-4-1 to 41-4-27. When later asked to extend *Hicks* to FLSA claims because the legislature had not included such federal claims in its statutory response, that court declined. It instead held that *Hicks*'s abolition of common law sovereign immunity had left the state's presumptive immunity to federal liability intact. *Cockrell v. Bd. of Regents of N.M. State Univ.*, 45 P.3d 876, 882–84 ¶¶ 10–15 (N.M. 2002). Thus, New Mexico retained its immunity to federal damages liability in its own courts. *Id.* at 884 ¶ 15. And given its constitutional stature, that protection's waiver required "a clear and unambiguous expression of legislative intent to consent to suit for FLSA claims." *Id.* at 886 ¶ 20.

¶17 Redgrave's reliance on *Byrd v. Oregon State Police*, 238 P.3d 404 (Or. Ct. App. 2010), fails to rebut this view. There the Oregon Court of Appeals held that the state had waived its immunity to FLSA claims because they are "torts" as the legislature defined the term in the Oregon Tort Claims Act ("OTCA"). *Id.* at 405. The court then rejected the argument that *Alden*'s "stringent" waiver standard applied when asking whether a state has consented to federal liability in its own courts. In its view,

> *Alden* did not make the Eleventh Amendment standard for waiver of state sovereign immunity applicable to the question whether a state has waived its sovereign immunity against being sued in its own courts. Whether a state has waived its sovereign immunity against being sued in federal court, that is, whether it has waived its protection under the Eleventh Amendment against such actions, presents a federal-law question. Whether a state has waived its sovereign immunity against being sued in its own courts presents a state-law question.

*Id.* at 406.  Two considerations temper *Byrd*'s instructive value.

**¶18**        First, whether waiver has in fact occurred is undeniably a state law question.  State courts remain the ultimate interpreters of the laws by which such waivers are generally made.  *See Herb v. Pitcairn*, 324 U.S. 117, 125–26 (1945) ("This Court from the time of its foundation has adhered to the principle that it will not review judgments of state courts that rest on adequate and independent state grounds.  The reason is so obvious that it has rarely upon thought to warrant statement." (citations omitted)).  What standard governs the waiver of a federal constitutional right, however, is not.  *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969) ("The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards.").  *Byrd*'s venue-based conception of the appropriate waiver standard would reduce sovereign immunity to something short of a constitutional right and, at least in certain instances, permit the federal government to "wield greater power in the state courts than in its own judicial instrumentalities."  *Alden*, 527 U.S. at 752.  It would also deny states the "reciprocal privilege" of retaining immunity in both federal and state tribunals.  *Id.* at 749–50; *accord Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) ("[T]he vulnerability of the State's purse [is] the most salient factor in Eleventh Amendment determinations.").  Meanwhile, the proliferation of statutes waiving or limiting states' sovereign immunity "only confirms the prevalence of the traditional understanding that a State could not be sued in the absence of an express waiver."  *See Alden*, 527 U.S. at 724.

**¶19**        Second, *Byrd*'s refusal to apply the federal constitutional waiver standard is dicta.  The OTCA specifies that "every public body is subject to action or suit for its torts," Or. Rev. Stat. § 30.265(1), constituting an express and unequivocal waiver of immunity for torts.  And the court had held previously that the Oregon legislature intended that FLSA claims be classified as "torts."  *See Butterfield v. State*, 987 P.2d 569, 572–73 (Or. Ct. App. 1999).  There was little need, then, to address the "Eleventh Amendment standard for waiver of state sovereign immunity," *see Byrd*, 238 P.3d at 406, which, by all appearances, had been satisfied already.[5]

---

[5] Redgrave's reliance on *Hartman v. Regents of University of Colorado* faces a similar limitation, *see* 22 P.3d 524, 529 (Colo. App. 2000) (FLSA claim not a tort action and therefore outside statute granting immunity to state entities

**¶20**        Our constitution expressly assigns state liability matters, including the waiver of sovereign immunity, to the legislature, *see* Ariz. Const. art. 4, pt. 2, § 18, which has expressly allowed state liability under "the statutes and common law of this state," 1984 Ariz. Sess. Laws, ch. 285, § 1(A). Arizona courts have observed this limitation; federal courts have not attempted to expand it; and similarly situated state courts have resisted waiver absent some express statutory provision. We choose to exercise the same restraint here. *See Cockrell*, 45 P.3d at 883 ¶ 13. We accordingly hold that, for Arizona to be liable for damages under the FLSA, legislative consent must be "expressly and unequivocally stated in the text of the relevant statute." *See Sossamon*, 563 U.S. at 290.

### B. Existence of Waiver

**¶21**        This standard is fatal to Redgrave's waiver argument.[6] A statutory waiver of Arizona's immunity to federal damages liability may only be found "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *See Coll. Sav. Bank*, 527 U.S. at 678 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). The Act contains no such language.

**¶22**        "Our goal in interpreting statutes is to give effect to the intent of the legislature." *Sell v. Gama*, 231 Ariz. 323, 327 ¶ 16 (2013) (quoting *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325 ¶ 8 (2011)). Typically, that process begins and ends with the statutory text. *Id.* "Statutory terms, however, must be considered in context." *Estate of Braden*, 228 Ariz. at 325 ¶ 8. Such context may include a contemporaneous preamble or statement of purpose and intent, which we will consider even where the text is not ambiguous. *See Fleming*, 237 Ariz. at 418 ¶¶ 18–19 (construing Act in accordance with statement of purpose and intent); *Doe*,

---

for tort and potential tort claims), as does her reference to *Board of Education of Baltimore County v. Zimmer-Rubert*, *see* 973 A.2d 233, 242–43 (Md. 2009) (statutory waiver of immunity "to *any* claim of $100,000 or less" unambiguously encompassed all state and federal claims within that monetary limit).

[6] At oral argument, Redgrave's counsel conceded that the Arizona legislature has not explicitly consented to damages liability under the FLSA. Nevertheless, in the interest of providing a complete answer to the question certified by the Ninth Circuit, this opinion addresses the issue in full.

200 Ariz. at 175–76 ¶ 4 (same); *Fidelity*, 191 Ariz. at 224–25 ¶ 7 (same). If the two conflict, however, the text must prevail. And where ambiguity does arise, we consult "secondary interpretation methods, such as the statute's subject matter, historical background, effect and consequences, and spirit and purpose." *Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13 (2020).

¶23 The Act's statement of purpose and intent bears repeating. In adopting the Act, the legislature declared it "the public policy of this state that public entities are liable for the acts or omissions of public employees *in accordance with the statutes and common law of this state.*" 1984 Ariz. Sess. Laws, ch. 285, § 1(A) (emphasis added). It further instructed that "[a]ll of the provisions of this act should be construed with a view to carry out the above legislative purpose." *Id.* This duly enacted legislative statement gave us the Act's presumption of liability. *See Doe*, 200 Ariz. at 176 ¶ 4 (construing Act's immunity provisions narrowly). It follows that the same statement's explicit reference to sources of state law limits the scope of that presumption. The legislature just as easily could have declared a public policy of state liability in accordance with state and federal law, imploring the Act's interpreters to construe it accordingly. But it did not.

¶24 The legislature's emphasis of state liability under state law in turn moots the parties' and amici's concern with whether the FLSA sounds in tort or in contract. Even assuming the Act encompasses both, the legislature's instruction that it be construed in favor of liability "in accordance with the statutes and common law of this state" stops short of permitting federal liability. *See* 1984 Ariz. Sess. Laws, ch. 285, § 1(A). The New Mexico example is instructive. Before *Cockrell* deemed constitutional immunity beyond the scope of judicial and legislative efforts to limit common law immunity, the court had held that its abolition of common law immunity in *Hicks* had done so "in all its ramifications, whether in tort or contract or otherwise." *Torrance Cnty. Mental Health Program v. N.M. Health & Env't Dep't*, 830 P.2d 145, 149 ¶ 14 (N.M. 1992). Yet it had no trouble distinguishing New Mexico's presumptive waiver of immunity under state law from the state's continued immunity to federal damages liability. *See Cockrell*, 45 P.3d at 884–87 ¶¶ 16–24. Nor do we.

¶25 Redgrave's reading of the Act's absolute immunity provision meets a similar fate. Although it limits such immunity to "acts or omissions . . . constituting . . . [t]he exercise of a judicial or legislative function [or t]he exercise of an administrative function involving the determination of fundamental governmental policy," A.R.S. § 12-820.01(A)(1)–(2), the Act

commands that this provision be read in accordance with the legislature's express purpose of making state entities liable for violations of state law. An absence of waiver here does not depend upon a finding that the state's alleged FLSA violations fall into one of these two categories. *See Sossamon*, 563 U.S. at 284 ("Waiver may not be implied.").

¶26 We likewise reject amici's suggestion that the legislature implicitly waived immunity by including a couple of references to federal law in Arizona's own wage and hour law. The statute's use of federal overtime requirements in defining the state's own overtime rates for public employees, *see* A.R.S. § 23-391(A)(1) (time and a half "if overtime compensation is mandated by federal law"), (2) (regular compensation "[i]f federal law does not mandate overtime compensation"), hardly makes damages liability under the FLSA inevitable, *see Coll. Sav. Bank*, 527 U.S. at 678. Nor did the Department of Administration, by incorporating FLSA regulations into its own, *see* Ariz. Admin. Code § R2-5A-404, waive the state's immunity on the legislature's behalf. At most, such regulations reflect the state's efforts to meet its FLSA obligations despite its continued immunity to damages liability. *See Alden*, 527 U.S. at 754–55 (suggesting states' "good faith" gives "important assurance" states will still obey "valid federal law"). Even if implicit waivers were enough, then, none exist here.

¶27 All told, the legislature has not consented to damages liability under the FLSA. Where a claim is based upon "the statutes and common law of this state," the Act's command is clear: absent some other form of immunity—for instance, qualified immunity under § 12-820.02—the state is presumptively amenable to suit. *See* 1984 Ariz. Sess. Laws, ch. 285, § 1(A); *Coll Sav. Bank*, 527 U.S. at 678. The same is not true of federal damages claims. No matter how "restrained and narrow" our construction of the Act's immunity provisions, such claims lie beyond the legislature's stated scope of consent. *See Fidelity*, 191 Ariz. at 225 ¶ 7.

## III. CONCLUSION

¶28 We answer the Ninth Circuit's certified question as follows: Because the legislature has neither expressly nor unequivocally implied its consent to federal damages liability, Arizona has not consented to damages liability for a state agency's violation of the FLSA's minimum wage or overtime provisions.

11