24 P.3d 1269

Jane DOE, on behalf of and for the benefit of John DOE, her minor child, Plaintiff–Appellant,

and

Gilbert Unified School District, a governmental entity, Defendant–Appellant.

v.

STATE of Arizona, Defendant–Appellee.

No. CV–00–0252–PR.

Supreme Court of Arizona, En Banc.

May 30, 2001.

Rhees, Hopkins & Kreamer, by Michael L. Rhees, Joseph C. Kreamer and Kelly Brown, Phoenix, Attorneys for Doe.

Jones, Skelton & Hochuli, by Georgia A. Staton and Eileen J. Dennis GilBride, Phoe-

nix, Attorneys for Gilbert Unified School District.

Janet A. Napolitano, The Attorney General, by Richard F. Albrecht, Assistant Attorney General and Michael T. O'Toole, Assistant Attorney General and Paula S. Bickett, Assistant Attorney General, Phoenix, Attorneys for State of Arizona.

## OPINION

### McGREGOR, Justice.

¶ 1 Doe, on behalf of her minor son, filed suit against the Gilbert Unified School District (GUSD) and the Arizona Department of Education (ADOE). The suit alleged that GUSD teacher Kenneth R. Graham had repeatedly molested Doe's son, that ADOE negligently processed and approved Graham's application for a teaching certificate, and that GUSD negligently failed to protect Doe's son from Graham. After Doe amended her complaint to substitute the State for ADOE, the trial court granted the State's motion to dismiss on the grounds that Arizona Revised Statutes (A.R.S.) section 12–820.01 absolutely immunized its certification decision. Doe and GUSD appealed, and the court of appeals affirmed the trial court's dismissal of Doe's claims against the State. We granted review to determine whether the State is entitled to absolute immunity. We exercise jurisdiction pursuant to Arizona Constitution Article 6, Section 5.3, and now reverse.

### I.

■ ¶ 2 In reviewing the trial court's decision to dismiss for failure to state a claim, we assume as true the facts alleged in the complaint and affirm the dismissal only if, as a matter of law, the plaintiff would not be entitled to relief on any interpretation of those facts. *Fidelity Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224 ¶ 4, 954 P.2d 580, 582 ¶ 4 (1998). Here, the plaintiff asserts that the State acted in a grossly negligent manner in granting Graham a teaching certificate.[1] The plaintiff points in particular to Graham's application for a substitute teaching certificate, which asked whether he had been convicted of a crime.[2] Graham reported a conviction for disorderly conduct at Arizona State University. According to the complaint, Graham pled to this lower charge after an undercover police officer arrested him for public sexual indecency. However, on Graham's later application for a teaching certificate, he answered "no" to the same question.

### II.

#### A.

■ ¶ 3 In *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982), we held that, as a matter of common law, governmental tort liability is coextensive with the liability of private actors. *Ryan*, 134 Ariz. at 310, 656 P.2d at 599. We noted that some special governmental immunities for judicial, legislative, and high-level executive functions would continue to be necessary, and invited the legislature to participate in developing this area of the law. *Id.* Following that decision, Governor Bruce Babbitt established the Governor's Commission on Governmental Tort Liability (Commission) to propose a recommended course of legislative action. After the Commission issued its report, the legislature defined the boundaries of governmental absolute and qualified immunity in A.R.S. sections 12–820 to 12–826, "Actions Against Public Entities or Public Employees" (the act). *See* S. 1225, 36th Leg., 2nd Sess. (1983); *see also generally* James L. Conlogue, Note, *A Separation of Powers Analysis of the Absolute Immunity of Public Entities*, 28 Ariz. L.Rev. 49 (1986) (describing the legislative proposals and Commission work that preceded enactment).

■ ¶ 4 The legislative statement of purpose and intent in the act declares that it is

---

1. Although Doe now asserts that the State acted in a grossly negligent manner, her complaint alleges only negligent behavior. Because we hold that A.R.S. section 12–820.02 affords the State qualified immunity, Doe must show gross negligence in order to recover.

2. Arizona Administrave Code R7–2–601 to R7–2–618 (2000), promulgated pursuant to A.R.S. section 15–203.A.21 (1991), describes the requirements for teacher certification.

"the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state." 1984 Ariz. Sess. Laws ch. 285, § 1. The act decrees that all its provisions "be construed with a view to carry out the above legislative purpose." *Id.* Accordingly, as this court has emphasized, governmental liability is the rule in Arizona and immunity is the exception. *E.g., Fidelity Sec. Life Ins. Co.,* 191 Ariz. at 225 ¶ 7, 954 P.2d at 583 ¶ 7. We therefore construe immunity provisions narrowly. *Id.*

¶ 5 Section 12–820.01, which defines the instances in which absolute immunity applies, distinguishes the exercise of judicial and legislative functions from the exercise of administrative functions. The statute provides absolute immunity to all of the former, but immunizes only those administrative functions that involve "the determination of fundamental governmental policy." A.R.S. § 12–820.01.A.2 (1992). This distinction ensures that courts will not second-guess the policy determinations of a coordinate branch of government, but does not extend immunity any farther than necessary to achieve that end. *Cf.* Restatement (Second) of Torts § 895B, cmt. d (1979); *see also* Governor's Commission on Governmental Tort Liability, Arizona Governmental Tort Claims Act, Majority Report at 11 (1983) (explaining that Restatement § 895B provided the inspiration for the Committee's recommended language, which was reflected in the enacted version).

■ ¶ 6 For the actions of an administrative body to receive absolute immunity, "fundamental governmental policy is the element which, first and foremost, must be present in the decision making process." *Fidelity Sec. Life Ins. Co.,* 191 Ariz. at 225 ¶ 10, 954 P.2d at 583 ¶ 10. The statutory scheme recognizes that "[t]hose who promulgate[ ] ... rules and regulations ... determine[ ] fundamental governmental policy and exercise[ ] discretion in so doing, but, except perhaps in the most extraordinary circumstances, those who apply the rules and regulations day to day do not." 191 Ariz. at 226 ¶ 14, 954 P.2d at 584 ¶ 14. The statute there-

fore provides immunity for "such matters as ... a decision as to the direction and focus of an entire regulatory scheme," but not for operational actions and decisions within that regulatory scheme. 191 Ariz. at 225 ¶ 11, 954 P.2d at 583 ¶ 11.

¶ 7 The legislative history of the immunity provisions affecting licensing decisions indicates that in this area, as in others, the legislature chose to distinguish between fundamental policy decisions related to licensing activities and operational decisions made within the regulatory scheme. The Commission's majority report recommended qualified immunity for the "issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or other authorization." Governor's Commission on Governmental Tort Liability, Arizona Governmental Tort Claims Act 22 (1983). The minority report urged absolute immunity for these actions. *Id.* at 29. Legislation subsequently introduced in the Senate followed the minority recommendation and, in a section addressing only permits and licensing, provided absolute immunity for the issuance, denial, and revocation of permits by authorized public entities or employees. S. 1225, 36th Leg., 2nd Sess. at 4 (1984). In the House of Representatives' Government Operations Committee, a strike-everything amendment consolidated the various governmental functions the Senate version had absolutely immunized into one section. The new section granted absolute immunity to a broad range of functions, including the "issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization." Minutes of the Comm. on Gov't Ops., Ariz. H.R., 36th Leg., 2nd Sess. at app. 2 (March 28, 1984).

¶ 8 This broad grant of absolute immunity for all licensing functions did not survive. A House floor amendment which generated the language finally adopted on the subject of licensing, divides actions involving licensing and regulation into two groups. *See* State of Arizona, Journal of the House of Representatives 454 (1984) (floor amendment by Rep. Hull, April 5, 1984). The first provision, which became A.R.S. section 12–820.01,[3] ac-

---

3. A.R.S. section 12–820.01 provides:

A. A public entity shall not be liable for acts

cords absolute immunity to "[t]he licensing and regulation of any profession or occupation." The second, which became A.R.S. section 12–820.02, provides qualified immunity for "[t]he issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization ...."[4] In large part, the legislature adopted the approach proposed in the Commission's majority report, which had recommended a grant of qualified immunity for activities related to licensing. The legislature, however, did not entirely adopt the Commission's approach; it also afforded absolute immunity to certain licensing activities, defined as those involving the licensing and regulation of any profession or occupation.

¶ 9 We conclude that the most reasonable interpretation of the legislative actions that led to the language of sections 12–820.01 and 12–820.02 is that the legislature intended to provide absolute immunity for fundamental governmental policy determinations involving the licensing of professions and occupations, while according only qualified immunity to particular decisions to grant or revoke licenses. Under that interpretation, the State's decision to require that teachers be certificated, as well as decisions related to such matters as establishing certification requirements, developing an application, and establishing procedures for processing applications and investigating applicants receive absolute immunity under section 12–820.01 because they involve the determination of fundamental governmental policy. The processing of a particular application in accordance with established procedures, however, does not involve the determination of fundamental governmental policy and therefore enjoys only qualified immunity under A.R.S. section 12–820.02.

¶ 10 The teaching certification context provides an instructive example of the distinction between fundamental governmental policy and day-to-day regulatory decisions. By statute, teaching certificates may not be issued to persons convicted of certain listed offenses. A.R.S. § 15–534 (1991). The State could determine, as a matter of policy, that it would issue certificates to teachers convicted of any offense other than those listed in section 15–534. If the State made that decision, section 12–820.01 would afford it absolute immunity from claims asserting that the State should not issue certificates to persons convicted of an offense not listed in the statute. If, however, the State erred in its processing of a particular teaching application and issued a certificate to someone convicted of one of the listed offenses, only qualified immunity would apply.

¶ 11 Our interpretation of the statute gives effect to the evident legislative intent to separate underlying policy decisions related to licensing and regulation of professions and occupations from the application of those policies to individual cases. The legislature expressly rejected proposed language absolutely immunizing all decisions to issue, revoke, or suspend licenses of any kind, without reference to whether these decisions involve the

and omissions of its employees constituting:
1. The exercise of a judicial or legislative function; or
2. The exercise of an administrative function involving the determination of fundamental governmental policy.
B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:
1. A determination of whether to seek or whether to provide the resources necessary for:
  (a) The purchase of equipment,
  (b) The construction or maintenance of facilities,
  (c) The hiring of personnel, or
  (d) The provision of governmental services.
2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.

3. The licensing and regulation of any profession or occupation.
A.R.S. § 12–820.01 (1992).

4. A.R.S. section 12–820.02 provides:

Unless a public employee acting within the scope of the public employee's employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:
. . . .
5. The issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization for which absolute immunity is not provided pursuant to § 12–820.01.
A.R.S. § 12–820.02 (2000).

determination of fundamental governmental policy. Moreover, our interpretation gives effect to the directive of section 12–820.01.A.2 that only those administrative actions that involve the determination of fundamental governmental policy be accorded absolute immunity. Applying the absolute immunity provision to licensing decisions that are clerical or operational in nature would be inconsistent with the legislature's directive. In addition, our interpretation is consistent with other language in the statute. We find instructive the legislature's decision to provide absolute immunity only to decisions affecting "professions and occupations," rather than to decisions affecting individual professionals. This language supports our conclusion that absolute immunity extends to the regulation and licensing of a profession as a whole, rather than to a decision to grant a license to a particular member of that profession. *Cf. Fidelity Sec. Life Ins. Co.*, 191 Ariz. at 225 ¶ 11, 954 P.2d at 583 ¶ 11(noting that the statute provides absolute immunity for decisions "as to the direction and focus of an entire regulatory scheme.").

¶ 12 Finally, our decision gives effect to both section 12–820.01 and section 12–820.02. We read statutes as a whole and seek to give meaningful effect to all of their provisions. *E.g., Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). If, as the State asserts, the absolute immunity provision applies to all decisions affecting individual licensing and regulation of any profession or occupation, little remains for the qualified immunity provision set out in section 12–820.02.5 as it relates to professions or occupations. We think that the legislature, rather than intending to adopt overlapping statutes, intended to adopt a scheme that distinguishes between basic policy and regulatory decisions.

¶ 13 We acknowledge two concerns that might support a contrary approach. First, by limiting the meaning of "[t]he licensing and regulation of any profession or occupation" in section 12–820.01.B.3 to decisions affecting fundamental governmental policy, arguably we have read out of the statute any limitation to professions or occupations. That is, because all licensing and regulatory

schemes, even the licensing and regulation of drivers, potentially involve fundamental governmental policies, under our interpretation subsection B.3 adds nothing to the statute. Second, section 12–820.02.5 accords qualified immunity to the issuance of any license "for which absolute immunity is not provided pursuant to § 12–820.01." That language could be interpreted as suggesting that section 12–820.01 accords absolute immunity to the issuance of some particular licenses. We do not find these arguments persuasive because they fail to take into account the legislative history of the immunity statutes and ignore the clear demand of section 1 to construe immunity statutes narrowly. *Supra* ¶ 4.

## B.

¶ 14 Doe argues that section 12–820.01 does not provide absolute immunity to the State because subsection B.3's reference to "professions and occupations" applies only to those professions and occupations listed in Title 32 of the Arizona Revised Statutes. Doe provides no compelling reason to read "professions and occupations" in this restricted manner. The language of the statute expresses no such limitation, although the legislature easily could have added language defining the terms with reference to Title 32 had it wished to do so. *See State v. Medina*, 193 Ariz. 504, 512 ¶ 23, 975 P.2d 94, 102 ¶ 23 (1999). We therefore reject the argument that the immunity provision of section 12–820.01 applies only to those professions and occupations covered by Title 32.

## III.

¶ 15 The superior court erred in dismissing Doe's complaint on grounds of absolute immunity. We vacate the opinion of the court of appeals, reverse the superior court's order granting the State's motion to dismiss, and remand to the superior court for further proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice

Chief Justice, STANLEY G. FELDMAN, Justice and FREDERICK J. MARTONE, Justice.