NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DEBORAH TOURTILLOT, et al.,
*Plaintiffs/Appellants/Cross-Appellees*,

*v.*

YUMA COUNTY,
*Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 17-0769
FILED 1-15-2019

Appeal from the Superior Court in Maricopa County
No. CV2015-091608
The Honorable David M. Talamante, Judge

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED**

COUNSEL

Karnas Law Firm, P.L.L.C, Tucson
By M. David Karnas
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees Deborah Tourtillot, John
Tourtillot, Alora Dugan, Angelene Cabrales, Kirby Dugan, Brandon Phillips,
and Lorena Tambo*

Davis Miles McGuire Gardner, P.L.L.C, Tempe
By Michael E. Medina Jr.
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees Deborah Tourtillot, John*
*Tourtillot, Alora Dugan, Angelene Cabrales, Kirby Dugan, Brandon Phillips,*
*and Lorena Tambo*


Law Offices of C. Candy Camarena, Yuma
By Cornelius C. Camarena
*Counsel for Plaintiffs/Appellants/Cross-Appellees Milson Jose, Josephine Kolb,*
*Loki Morrow, Linus Morrow, Deena Morrow, and Hannah Morrow*

Jones Skelton & Hochuli, P.L.C., Phoenix
By Michele Molinario, Diana J. Elston, Justin M. Ackerman
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**J O N E S**, Judge:

**¶1**　　　　Appellants challenge the trial court's entry of judgment in favor of Yuma County (the County) after finding it statutorily immune pursuant to Arizona Revised Statutes (A.R.S.) § 12-820.01.[1]　The County cross-appeals from the denial of a separate motion for summary judgment alleging it is entitled to judgment as a matter of law upon its affirmative defense under A.R.S. § 12-820.03.　For the following reasons, we conclude the County is not statutorily immune and genuine issues of material fact exist regarding the applicability of the affirmative defense.　Accordingly, we vacate the order of dismissal, affirm the denial of the alternate motion for summary judgment, and remand for further proceedings.

---

[1]　　　　Absent material changes from the relevant date, we cite a statute's current version.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Appellants are the survivors of three people (the Decedents) killed in a traffic accident at the intersection of West County 9th Street and South Avenue D in Yuma (the Intersection). At the time of the accident, the east- and westbound traffic on County 9th Street was controlled with oversized 48-inch stop signs, signs warning of the upcoming stop signs, and flashing beacons with signs cautioning that "Cross Traffic Does Not Stop." The traffic on Avenue D was not required to stop and was not warned of the Intersection. The posted speed limit was thirty-five miles per hour on Avenue D and westbound County 9th Street and fifty miles per hour on eastbound County 9th Street.

**¶3** In April 2013, the Decedents' vehicle approached the Intersection on County 9th Street from the west. After stopping at the Intersection and then attempting to cross, the vehicle was struck by a pick-up truck traveling southbound on Avenue D at nearly twenty miles per hour above the posted speed limit. Appellants filed wrongful death claims against the County alleging the County's negligent design, placement, maintenance, and operation of traffic-control devices at the Intersection caused the accident and resulting fatalities. In their complaint, Appellants alleged both that the County should have installed a multiway stop at the Intersection and that the speed on Avenue D was not properly controlled.

**¶4** In January 2017, the County filed two dispositive motions. The first argued the County was absolutely immune from liability for legislative and fundamental government policy decisions pursuant to A.R.S. § 12-820.01; the second argued the County was not subject to liability for injuries arising from road maintenance or improvement pursuant to A.R.S. § 12-820.03.

**¶5** The evidence, viewed in the light most favorable to Appellants, *Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 209, ¶ 3 n.2 (App. 2018) (quoting *City of Tempe v. State*, 237 Ariz. 360, 362, ¶ 1 n.3 (App. 2015)),[2] reflects that the County has adopted a roadway analysis process. Through this process, various County

---

[2] We reject the County's suggestion that this Court is bound to accept its version of the facts because its statement of facts was not properly opposed. The unreported federal cases upon which the County relies are unpersuasive and represent a draconian departure from the traditional notions of notice and fairness that have always been the standard of this Court.

employees and committees periodically collect and compile traffic accident data, which the County then reviews before commissioning engineering studies to determine whether improvements are necessary to keep roadways within its jurisdiction safe. Thereafter, major roadway improvements are subject to approval and funding by the County's board of supervisors (the Board). Once implemented, the County monitors the changes to assess their impact upon traffic accidents.

¶6        The County first employed a traffic engineering consultant to evaluate the safety of the Intersection after observing an increase in accidents in 1990. Although traffic at the Intersection was, at that time, controlled solely by standard-sized stop signs facing the east- and westbound traffic on County 9th Street, the County determined further intervention was not warranted. After a second study (the 2000 Traffic Study), the County chose, with approval and funding from the Board, to install oversized stop signs with flashing beacons on the County 9th Street approaches. In 2008, without having commissioned another study, the County placed warnings on the existing stop signs on County 9th Street that "Cross Traffic Does Not Stop."

¶7        To support its motions for summary judgment, the County presented expert testimony that the Intersection "was designed, constructed and maintained consistent with generally accepted engineering and design standards at the time." The expert opined that the Decedents' accident was caused by human factors alone, with no contribution from roadway or vehicle factors. Appellant submitted a competing opinion that the implementation of a four-way stop was "the only reasonable countermeasure" to address the accidents that continued to occur at the Intersection each year.

¶8        After taking the matter under advisement, the trial court granted the County's first motion for summary judgment and denied the second. Appellants appealed the final judgment, and the County cross-appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1). *See also Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 316, ¶ 7 (App. 1998) (holding that although an order denying summary judgment is generally not appealable, the court may review the order along with one granting summary judgment "to avoid piecemeal litigation") (citing *Mealey v. Orlich*, 120 Ariz. 321, 321 (1978), and *State Farm Mut. Auto. Ins. v. Peaton*, 168 Ariz. 184, 194 (App. 1990)).

**DISCUSSION**

## I. Motion for Summary Judgment No. 1: Absolute Immunity Under A.R.S. § 12-820.01

**¶9** Appellants argue the trial court erred in finding the County absolutely immune because the County's decisions to approve, fund, and maintain improvements to the Intersection are not entitled to legislative or administrative function immunity. The existence and scope of governmental immunity present questions of law subject to *de novo* review. *Tostado v. City of Lake Havasu*, 220 Ariz. 195, 198, ¶ 12 (App. 2008) (citing *Link v. Pima Cty.*, 193 Ariz. 336, 341, ¶ 18 (App. 1998)).

**¶10** Generally, "governmental immunity is the exception and liability is the rule." *Id.* (citing *AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 694 (9th Cir. 1999)). Nonetheless, "a narrow exception to the general rule" exists in A.R.S. § 12-820.01(A):

> A public entity shall not be liable for acts and omissions of its employees constituting either of the following:
>
> 1. The exercise of a judicial or legislative function.
>
> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.

*See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 164 (quoting *Goss v. City of Globe*, 180 Ariz. 229, 232 (App. 1994)). The burden to prove the statute's applicability rests with the public entity asserting immunity. *AlliedSignal*, 182 F.3d at 695 (citing *Fid. Sec. Life Ins. v. State, Dep't of Ins.*, 191 Ariz. 222, 225, ¶ 9 (1998)). We construe A.R.S. § 12-820.01(A) narrowly and will find immunity only if the statute "clearly applies." *Schabel*, 186 Ariz. at 164; *Cty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 603, ¶ 34 (App. 2010) (citing *Doe ex rel. Doe v. State*, 200 Ariz. 174, 176, ¶ 4 (2001)).

### A. Legislative Function Immunity

**¶11** A public entity is immune from suit for acts or omissions involving the exercise of a legislative function. A.R.S. § 12-820.01(A)(1). "The County exercises its 'legislative function' by creating, defining, or regulating rights," *Yakima Compost*, 224 Ariz. at 603, ¶ 35 (citations omitted), or prescribing a new plan or policy, *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 489 (1991) (quotation omitted). Appellants argue the Board's decision

to approve specific traffic-control measures at a specific intersection is not a legislative function.[3]  We agree.

¶12            Although a municipal-level decision to adopt a street-improvement policy or to fund street construction generally is a legislative act, *Wennerstrom*, 169 Ariz. at 495; *see also Kohl v. City of Phoenix*, 215 Ariz. 291, 294-95, ¶¶ 9, 14-15 (2007), the approval of a specific project that carries out the existing policy is not, *Wennerstrom*, 169 Ariz. at 495 (noting the project at issue "merely carrie[d] out the [previously approved street-improvement] policy" and did not qualify as a legislative act).  *See also Galati v. Lake Havasu City*, 186 Ariz. 131, 136 (App. 1996) (distinguishing between immune funding decisions and non-immune spending decisions).  Here, the County's improvements to the Intersection merely carried out an existing policy, and thus, the County was not performing a legislative function and is not protected from liability under A.R.S. § 12-820.01(A)(1).

## B.    Administrative Function Immunity

¶13            Governmental immunity also attaches to "the exercise of an administrative function involving the determination of fundamental governmental policy."    A.R.S.  §  12-820.01(A)(2).    Fundamental governmental policy involves the exercise of discretion and includes, *inter alia*, "[a] determination of whether to seek or whether to provide the resources necessary for . . . [t]he construction or maintenance of facilities," and "[a] determination of whether and how to spend existing resources." A.R.S. § 12-820.01(B)(1)(b), (2); *see also A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 537, ¶ 66 (App. 2009) (citing *Kohl*, 215 Ariz. at 295, ¶ 15).

¶14            The County argues that allocating funds for road maintenance and safety projects constitutes the determination of fundamental governmental policy.   However, "public administrative

---

[3]       The County argues Appellants waived this argument, and others, by failing to raise it in the trial court.  But the court cannot misapply the law simply because a summary judgment motion is not properly opposed.  *See* Ariz. R. Civ. P. 56(e) ("If the opposing party does not . . . respond, summary judgment *if appropriate*, shall be entered against that party.") (emphasis added).  Additionally, "when we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result."  *Evenstad v. State*, 178 Ariz. 578, 582 (App. 1993) (citing *Rubens v. Costello*, 75 Ariz. 5, 9 (1952)).

bodies make many decisions concerning allocation and expenditure of funds that could not be categorized as decisions involving the determination of fundamental governmental policy." *Schabel*, 186 Ariz. at 165. Indeed, the County's broad proposition "runs counter to the recognized principle that immunity statutes are to be narrowly construed." *A Tumbling-T*, 222 Ariz. at 537, ¶ 67); *see also Schabel*, 186 Ariz. at 165-66 ("Were every governmental decision to allocate or expend funds protected by absolute immunity, immunity would be the rule and liability the exception. Such a state of affairs would contradict express legislative intent and our common law."); *Galati*, 186 Ariz. at 136 ("[W]e decline to construe the immunity statutes to give a city absolute immunity for all actions affected by its spending priorities.").

¶15 To account for Arizona's preference for governmental liability:

> [C]ourts [analyzing whether a particular act involves fundamental governmental policy] have distinguished high-level policymaking decisions, which include promulgating rules and regulations, from operational decisions, which more often involve day-to-day implementation of a regulatory scheme. Policymaking decisions are absolutely immune, while operational decisions implementing such policy are not, even where they involve the exercise of some discretion. Hence, the relevant inquiry is whether the [government]'s decisions were limited to policymaking decisions or whether they also included operational decisions and exposed the [government] to tort liability.

*A Tumbling-T*, 222 Ariz. at 537, ¶ 67 (citing *Kohl*, 215 Ariz. at 295-96, ¶¶ 19-21); *accord Warrington ex rel. Warrington v. Tempe Elementary Sch. Dist. No. 3*, 187 Ariz. 249, 252 (App. 1996) (quoting *Evenstad*, 178 Ariz. at 582). Thus, the statute provides immunity only for "such matters as a decision as to the direction and focus" of an objective, but not for operational actions and decisions necessary to implement the chosen objectives. *Doe*, 200 Ariz. at 176, ¶ 6 (quoting *Fid. Sec.*, 191 Ariz. at 225, ¶ 11).

¶16 For example, in *A Tumbling-T*, a county flood control district argued its decision to construct flood-control projects on the Gila River involved the exercise of fundamental governmental policy under A.R.S. § 12-820.01(A)(2) and exempted it from suit related to the construction of individual projects. 222 Ariz. at 536, ¶ 64. This Court held that the "decision to alleviate flooding . . . was undoubtedly a policymaking

decision, involving the expenditure of significant funds and also coordination with the governor's office as well as various state and federal agencies." *Id.* at 537, ¶ 68. However, "the [d]istrict's implementation of its overall flood-control plan was operational in that it involved the exercise of professional engineering judgment." *Id.* And while the policymaking decision was immune, the individual operational decisions were not. *Id.* at 538, ¶ 72; *see also Doe*, 200 Ariz. at 177, ¶ 10 (explaining that decisions related to establishing teacher certification requirements and procedures for processing applications and investigating applicants are absolutely immune fundamental governmental policy acts, while the processing of a particular application in accordance with those requirements and procedures is not); *Sanchez ex rel. Gordon v. City of Tucson*, 189 Ariz. 429, 432 (App. 1997) (concluding the adoption of a comprehensive roadway illumination program constituted fundamental governmental policy shielded by A.R.S. § 12-820.01 while "low level negligence such as failing to erect a sign" was not), *vacated in part on other grounds*, 191 Ariz. 128 (1998); *Schabel*, 186 Ariz. at 166 (explaining that a government entity is absolutely immune for its decision to install a playground, but "the decisions as to what equipment and safety measures to install would not enjoy immunity from legal action") (citation omitted); *Warrington*, 187 Ariz. at 252 (holding that "one employee's decision whether to place a bus stop at one point or another [was] an operational decision, not a fundamental policy decision").

¶17        We agree with Appellants that the County's decision to operate and maintain a two-way stop at the Intersection, rather than a four-way stop, was not a decision on the direction and focus of an objective or a high-level policymaking decision. *See Rogers v. State*, 459 P.2d 378, 381 (Haw. 1969) ("[S]uch matters as the kinds of road signs to place and where to place them, and which center line stripings to repaint and when to repaint them, did not require evaluation of policies but involved implementation of decisions made in everyday operation of governmental affairs."). The decision was simply one of many day-to-day acts taken by the County, through its agents and the Board, to further the County's larger policy-driven roadway analysis process. Accordingly, the decision to maintain a two-way stop at the Intersection was an operational decision not subject to immunity under A.R.S. § 12-820.01(A)(2).

¶18        The County relies heavily upon the fact that the decision regarding the particular countermeasure to be employed at a particular intersection involves "judgment, discretion, [and] weighing of alternatives." *Warrington*, 187 Ariz. at 253 (quoting *Hanson ex rel. Hanson v. Vigo Cty. Bd. of Comm'rs*, 659 N.E.2d 1123, 1125-26 (Ind. Ct. App. 1996)). But

the exercise of discretion is important only to the extent it is used to formulate policy:

> Even where discretion is exercised, administrative decisions within government do not necessarily involve determinations of fundamental governmental policy. To be absolutely immune, therefore, fundamental governmental policy is the element which, first and foremost, must be present in the decision making process. . . . The term "discretion" is used in the statute only to define an essential characteristic of determinations involving fundamental governmental policy.

*Fid. Sec.*, 191 Ariz. at 225, ¶ 10; *see also Greathouse v. Armstrong*, 616 N.E.2d 364, 366-67 (Ind. 1993) ("The critical inquiry associated with the test [for distinguishing decisions involving the formulation of basic policy from those involving only the execution or implementation of that policy] is 'not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations.'") (quotation omitted). The fact that County employees could and did exercise professional judgment in deciding between competing countermeasures at a particular location does not change the nature of the decision from operational to policymaking. To the contrary, the need for professional judgment reinforces the character of the decision as operational. *See Warrington*, 187 Ariz. at 253 (concluding a school district was not immunized from liability for the placement of individual bus stops where the placement decision was made by an employee, in the exercise of his discretion, as part of the day-to-day performance of his job).

**¶19** We likewise reject the suggestion that the County's decision is immune under A.R.S. § 12-820.01(A)(2) because it implicates a policy decision to "avoid[] implementing too many 4-way stop signs." There is no evidence indicating the County adopted a policy against multiway stops. Moreover, although the *adoption* of such a policy might be immune, as explained above, its *application* remains operational.

**¶20** The County also relies upon *Kohl* to argue it is nonetheless entitled to immunity for its operational decision as it "flowed directly from" the decision to implement a roadway analysis process. The County errs in relying upon *Kohl* under the facts of this case. In *Kohl*, the plaintiffs sued the City of Phoenix for wrongful death after their teenage son was killed in an automobile accident at an intersection without a traffic signal. *Kohl*, 215 Ariz. at 292, ¶ 2. Our supreme court found the municipality was absolutely immune from suit where the allegation of negligence in failing to install a

traffic signal depended entirely upon the municipality's policy-level decision defining how it would identify and prioritize dangerous intersections for signalization. *Id.* at 296-97, ¶¶ 23, 26. Because the intersection at issue was never identified as a priority, the municipality never had the opportunity to exercise its own engineering judgment. *Id.* at 293, 296, ¶¶ 7, 23. Therefore, the decision (or lack thereof) to place a traffic signal at that intersection "flowed directly from" the immune policy decision and was not operational. *Id.*

¶21 Unlike *Kohl*, the County's decision to install a particular countermeasure at the Intersection here did not flow automatically from a policymaking decision to monitor and investigate traffic accidents within the County's jurisdiction. Rather, the County exercised independent judgment when it chose to evaluate the conditions surrounding the Intersection and select from among the available countermeasures. This operational decision is not immunized as part of the fundamental policymaking roadway analysis process.

¶22 In the absence of immunity, the County remains liable if it breaches its duty to maintain its roadways in a reasonably safe condition. *Goss*, 180 Ariz. at 232-33. The extent of the County's knowledge and whether it acted reasonably in choosing not to employ a multiway stop are disputed questions of fact precluding summary judgment in favor of either party. *See id.* at 233; *Bach v. State*, 152 Ariz. 145, 147 (App. 1986) ("What is reasonable on the one hand and negligent on the other will depend upon the particular facts of the case. The general rule is that 'where reasonable people could differ . . . the question of negligence is one of fact for a jury to decide.'") (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 357-58 (1985)). Accordingly, the judgment in favor of the County is vacated.

## II. Motion for Summary Judgment No. 2: Affirmative Defense Under A.R.S. § 12-820.03

¶23 On cross-appeal, the County argues the trial court erred in finding it failed to establish an affirmative defense to Appellants' claims pursuant to A.R.S. § 12-820.03(A) as a matter of law. That statute provides:

> A public entity or a public employee is not liable for an injury arising out of a plan or design for construction or maintenance of or improvement to transportation facilities, including highways, roads, streets, bridges or rights-of-way, if the plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time of the

preparation of the plan or design and the public entity or public employee gives to the public a reasonably adequate warning of any unreasonably dangerous hazards which would allow the public to take suitable precautions.

A.R.S. § 12-820.03(A). We construe A.R.S. § 12-820.03 narrowly. *Glazer v. State*, 237 Ariz. 160, 163, ¶ 12 (2015) (citing *Doe*, 200 Ariz. at 176, ¶ 4).

**¶24** Summary judgment on the County's affirmative defense is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *accord* A.R.S. § 12-820.03(B) ("If a genuine issue of material fact exists as to whether the public entity or public employee has met the requirements of subsection A of this section, the issue shall be resolved by a trial before and separate and apart from a trial on damages."). We review the order denying a motion for summary judgment *de novo*. *Glazer*, 237 Ariz. at 167, ¶ 29 (citing *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)). To successfully invoke the affirmative defense found within A.R.S. § 12-820.03(A), the County must prove all of its elements, including that "the plan or design conformed to engineering or design standards generally accepted when the plan or design was prepared," *Glazer*, 237 Ariz. at 164, ¶ 13 (citing *Hegel v. O'Malley Ins.*, 122 Ariz. 52, 56 (1979)), which the parties generally agree are set forth in the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD), *see* Fed. Highway Admin., U.S. Dep't of Transp., *Manual on Uniform Traffic Control Devices for Streets and Highways* (2009 ed. with 2012 revs.), as supplemented by the Traffic Control Devices Handbook (Handbook), *see* Inst. of Transp. Engineers, *Traffic Control Devices Handbook* (Seyfried, Robert K., ed., 2d ed. 2013).[4] *See also* 23 C.F.R. § 655.603(a) (adopting the MUTCD as "the national standard for all traffic control devices installed on any street . . . open to public travel"), (b) (requiring state MUTCDs and supplements to "be in substantial conformance with the National MUTCD").

**¶25** The County did not argue in its motion for summary judgment that the measures adopted to monitor, control, and warn of speed limits at the Intersection complied with generally accepted standards, despite Appellants' focus upon these purported deficiencies within their

---

[4]  For ease of reference, we cite the current versions of these manuals. There have been no material changes to the relevant provisions of the MUTCD since the date of the improvements to the Intersection, and the County cites the current version of the Handbook without objection from Appellant.

complaint. Thus, to the extent Appellants' claims arise from those circumstances, the County has failed to establish its entitlement to summary judgment. *See United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 196-97 (App. 1990) ("If the [moving party]'s motion failed to make a *prima facie* case . . . by omitting evidence of essential elements of its claim . . . then there was no basis for awarding summary judgment.").

¶26 Instead, without any mention of speed-control issues, the County argues the traffic-control plan at the Intersection complies with generally accepted standards because it is consistent with the MUTCD — even though the manual does not mandate any particular traffic-control configuration. *See generally* MUTCD at §§ 2B.05, 2B.07. The County bears the burden of proof on its affirmative defense, *Glazer*, 237 Ariz. at 164, ¶ 13 (citing *Hegel*, 122 Ariz. at 56), and it cannot prove its compliance with a standard by simply pointing out that the prevailing standard lacks rigid requirements. Moreover, the 2000 Traffic Study the County relies upon to support its decision to maintain the two-way stop acknowledges that a multiway stop was warranted under the MUTCD.

¶27 The MUTCD explains that a four-way stop "can be useful as a safety measure at intersections if certain traffic conditions exist." MUTCD at § 2B.07. The decision to implement a multiway stop "should be based on an engineering study," and may be justified if the intersection experiences a high-volume of traffic and there is a crash problem, "as indicated by 5 or more reported crashes in a 12-month period that are susceptible to correction by a multiway stop installation," such as right- and left-turn and right-angle collisions. *Id.* The Handbook provides further guidance as to when a multiway stop might be appropriate, urging adoption of "the least restrictive appropriate form of traffic control." Handbook at 113; *see also* A.R.S. § 28-643 (granting local authorities discretion to "place and maintain the traffic control devices on highways under their jurisdiction as they deem necessary").

¶28 Applying these authorities, the County describes the relevant standard as one of choosing the best option to avoid future accidents. To the extent the generally accepted standard for the plan or design of traffic-control devices truly incorporates a measure of discretion in the exercise of engineering judgment, the question as to whether the County has complied with that standard is simply not subject to resolution via summary judgment and must be submitted to a jury. *See Bach*, 152 Ariz. at 147. This is particularly true where, as here, the parties present competing expert testimony regarding the reasonableness of the County's actions.

**¶29**      The County nonetheless asserts it complied with the MUTCD when it considered and rejected the multiway stop in favor of "the most expensive and effective countermeasure" recommended within the 2000 Traffic Study. But, as Appellants point out, the cost of the countermeasure is irrelevant to its reasonableness, and the contents of that report are materially internally inconsistent.

**¶30**      The 2000 Traffic Study presents the County with four alternatives to improving safety at the Intersection:

> 1.      Install four-way stop signs on all approaches to the Intersection;
>
> 2.      Deploy targeted enforcement of speeding violations near the Intersection;
>
> 3.      Install flashing warning beacons on stop signs on minor approaches to the Intersection from County 9th Street; and
>
> 4.      Buy and protect sight triangles.

On the following page, within a discussion of the accident rate reductions anticipated for each proposal, the report explains that the third countermeasure "involves the installation of four advanced stop ahead warning signs supplemented with flashers on all approaches." Indeed, the estimated cost of the third countermeasure includes the addition of two stop signs to the Intersection.

**¶31**      Given these inconsistencies within the 2000 Traffic Study, it is unclear whether the third countermeasure contemplated traffic-control devices at all approaches to the Intersection and whether the calculated accident rate reduction for the third countermeasure was based upon installation of flashers at a two- or four-way stop. The parties' dispute over the interpretation of the 2000 Traffic Study creates a genuine issue of material fact as to whether the County adopted a plan "based on an engineering study" in compliance with the MUTCD.

**¶32**      Under the facts of this case, a reasonable jury could conclude the County's design failed to comply with generally accepted standards. Therefore, the County was not entitled to judgment as a matter of law on

its affirmative defense, and the trial court correctly denied its motion for summary judgment.[5]

## CONCLUSION

**¶33** The judgment entered in favor of the County is vacated, the order denying the motion for summary judgment on the County's affirmative defense is affirmed, and the case is remanded to the trial court for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[5] Because the County did not prove its design complied with generally accepted engineering requirements as a matter of law, we need not and do not address the remaining elements of the defense. *See* A.R.S. § 12-820.03(A).